**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ANDRIEA V. LANG**                                                          **CIVIL ACTION**

**VERSUS**                                                                         **NO. 08-0757**

**THE WINN-DIXIE CORPORATION**                                  **JUDGE DUVAL (5)**

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Winn-Dixie Montgomery, Inc. ("Winn Dixie") (Doc. 8). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion and dismisses all of plaintiff Andreia Lang's claims with prejudice.

### BACKGROUND

Andreia Lang, an African-American female, worked at Winn Dixie from 1984 until January 2008. She worked primarily in stores in the Baton Rouge area.[1] Ms. Lang worked in a variety of positions including part-time cashier, stocker, Front End Manager,[2] General Merchandise Manager, Assistant Store Manager, Co-Manager, and Co-Director.

Winn Dixie's Baton Rouge stores are in the New Orleans Region. At all times relevant herein, Edwin Tucker, a white male, served as the District Manager for the Winn Dixie New Orleans Region. In 2003 Mr. Tucker recommended and approved Ms. Lang's promotion to Co-Manager of Winn Dixie Store 1577 (Coursey Boulevard). Thereafter Winn Dixie transferred Ms. Lang to Store

---

[1] Ms. Lang did work for a period of time at a Winn Dixie in Atlanta after transferring stores due to her marriage.

[2] She held this position at a Winn Dixie in Atlanta.

1454 (Burbank St.) where she also served as Co-Manager. Co-Manager, a salaried position, was the supervisory position directly below the store manager Co-Managers were responsible for, among other things, opening and closing the store at various times and have supervisory authority over several people. The Co-Manager position required night work several times a week in connection with truck deliveries of inventory. The hours on delivery nights at the Burbank Store could be very late.

In November 2006, Ms. Lang's mother, who babysat Ms. Lang's young son, was diagnosed with cancer and thereafter Ms. Lang's parents had difficulty keeping the child during the evening hours. To ease the burden on her parents, Ms. Lang told Ron Thomas, the manager of Store 1454 that she would ask Edwin Tucker for a scheduling change or a transfer to another store. Ms. Lang spoke to Mr. Tucker about a scheduling change. Mr. Tucker did not approve a transfer request. It is disputed whether she received the requested scheduling accommodation.

In early 2007 Winn Dixie changed it's corporate structure eliminating the position of Co-Manager and creating the positions of Co-Director and Center Store Director. The Co-Director is now the manager directly below the Store Manager/Director. When Winn Dixie eliminated the position of Co-Manager during a corporate reorganization in February 2007, Ms. Lang became a Co-Director and worked as in that position for two months at Store 1454.

Following her mother's death Ms. Lang, realizing that her father would be unable to provide the necessary care for her son in the evenings, posted[3] for a position as a Pricing Manager (Scanning Manager) position at Winn Dixie Store 1461. Pricing Managers are paid by the hour, earn significantly less than Co-Managers, supervise only one employee, and are not responsible for

---

[3] "Posted" is Winn Dixie terminology for "applied for."

2

opening or closing the store. Ms. Lang received the Pricing Manager position.

In November 2007, Winn Dixie posted a vacancy for a Co-Director at Store 1467 (Old Hammond Highway). Ms. Lang posted for that position as did two other female employees.[4] Apparently two other people were interested in the position but did not post for it. Edwin Tucker and Lisa Sierra, the New Orleans Region Center Store Specialist, interviewed the candidates; however, Edwin Tucker made the final decision.

The interview evaluation for Ms. Lang indicates the following scores:

| | |
|---|---|
| Behavior - Multiple Task Oriented: | Acceptable |
| Behavior - Leadership: | Marginal |
| Behavior - Follow Through: | Acceptable |
| Behavior - Customer Focus: | Acceptable |
| Behavior - Developing Others: | Marginal |
| Behavior - Conflict Resolution: | Marginal |
| Behavior - Adaptability: | Acceptable |

Communication Evaluation: 3- Average

Thus, she scored 4 "acceptables," 3 "marginals," and no unacceptables.

Edwin Tucker filled the Co-Director position by transferring Marc Clement, a white male Winn Dixie employee, from his position as Co-Director Store 1577 into the position of Co-Director of Store 1467. Mr. Clement had not posted for the Co-Director position.

Mr. Clement's transfer to the Co-Director position at Store 1467 created a vacancy at the Co-Director position at Store 1577. In December 2007, Ms. Lang posted for the now vacant position of Co-Director of Winn Dixie Store 1577. Ms. Lang was not re-interviewed for the Co-Director

---

[4] One of those female applicants was African-American; the other was white.

position. Drew Robertson, a white male, who interviewed for the position received the job.[5]  Mr. Robertson had been employed by Winn Dixie for six years and ten months, a much shorter period than Ms. Lang's 23 years of service.  He had begun his Winn Dixie career as a bagger, customer service clerk, and had also served as an assistant manager and Center Store Manager.  He served as an assistant manager under Ms. Lang when she was a Co-Manager; he also served as the center store manager under Ms. Lang when she was a Co-Director.  During the interview process, Mr. Robertson received the following evaluations from Mr. Tucker:

| | |
|---|---|
| Behavior - Multiple Task Oriented: | Acceptable |
| Behavior - Leadership: | Acceptable |
| Behavior - Follow Through: | Superior |
| Behavior - Customer Focus: | Acceptable |
| Behavior - Developing Others: | Superior |
| Behavior - Conflict Resolution: | Acceptable |
| Behavior - Adaptability: | Acceptable |

Communication Evaluation: 4 - Average

Thus, Mr. Robertson received higher interview scores: 2 "superiors," 5 "acceptables," and no "marginals" or "unacceptables."  Mr. Robertson also received a higher communication evaluation than Ms. Lang.

Shortly after learning that she had not received either promotion, Ms. Lang filed an a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial and gender discrimination in both of her promotion attempts.  After receiving a right to sue letter from the EEOC, Ms. Lang filed suit in state court alleging gender and racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and La. Rev. Stat. 23:1006.  Additionally, she filed a

---

[5] Plaintiff asserts that even though Mr. Robertson interviewed for the position he did not post for the position.  Whether Mr. Robertson actually posted for the position is of no moment in this analysis.

claim for intentional infliction of emotional distress under Louisiana law. Winn Dixie removed the suit to federal court.

Defendant seeks summary judgment contending that plaintiff cannot establish a *prima facia* case of racial or gender discrimination with respect to either failure to promote claim, and that it is entitled to summary judgment on plaintiff's state law claim for intentional infliction of emotional distress. Plaintiff opposes the motion.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"  Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Stults v. Conoco, 76 F.3d 651 (5th Cir.1996), (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552- 53, 91 L.Ed.2d 265 (1986))). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith

Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). Finally, this Court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## LAW AND ANALYSIS

A. Employment Discrimination Claims

Plaintiff brings her claims for employment discrimination under Title VII of the Civil Rights Act of 1964 and La. Rev. Stat. 1006. Title VII prohibits employers from discriminating against employees on a number of grounds, including gender and race. 42 U.S.C. §2000e-2(a)(1).

Plaintiff may establish gender discrimination under Title VII through either direct or circumstantial evidence. *See Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004). Plaintiff offers no direct evidence of either gender or racial discrimination; she relies solely on circumstantial evidence.

Louisiana discrimination claims are analyzed under the same analytical framework as claims under Title VII. *King v. Phelps Dunbar, LLP*, 743 So.2d 181, 187 (La. 1999). It is axiomatic that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), establishes the procedural framework for analyzing motions for summary judgment involving Title VII claims which rely on circumstantial evidence of discrimination. To establish a *prima facie* case of racial or gender discrimination with respect to a failure to promote claims, plaintiff must establish that: (1) she is a member of the protected class; (2) she applied for a position for which she was qualified; (3) she was rejected for that position; and (4) after she was rejected,

the employer continued to seek applicants with the employee's qualifications or filled the position with someone from outside the protected class. *Celestine v. Petroleos de Venezuella, S.A.*, 266 F.3d 343, 354-55 (5th Cir. 2001). Once a plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises and the burden shifts to the defendant employer to produce a legitimate, non-discriminatory reason for the challenged action. "The defendant's burden during this second step is satisfied by producing evidence, which '*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action'". *Price v. Federal Express*, 283 F.3d 715, 720 (5th Cir. 2002), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 , 113 S.Ct. 2742, 125 S.Ct. 407 (1993). To put it another way, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), If the defendant employer satisfies its burden of producing a legitimate, non-discriminatory reason for the challenged actions, the plaintiff must present admissible evidence that the reasons offered by the defendant employer are a pretext for intentional discrimination. *Price v. Federal Express*, 283 F.3d at 720. For plaintiff to carry that burden, she must rebut each nondiscriminatory reason articulated by the employer. *McCoy v. City of Shreveport,* 492 F.3d at 557.

Winn Dixie asserts that plaintiff cannot establish a *prima facie* case of discrimination because there is no genuine of material fact concerning whether she was qualified for the position of Co-Director in November or December 2007. Before beginning the analysis, some background information on the Winn Dixie job structure is necessary. The parties disagree as to whether the Co-Manager position, as held by plaintiff in 2003 and thereafter, had the same duties and responsibilities as the Co-Director position after 2007. Edwin Tucker testified that "[t]he old co-

manager's position is more like a center store manager's job today. So, what a co-manager was doing back in 2003 to 2007 is what a center store manager is doing now." Doc. 8-4, Depo. of Edwin Tucker, p. 82. He also testified that the Co-Manager before 2007 is basically the same as the central store manager position after 2007. Marc Clement testified that as a Co-Director he "was more responsible for our perishable departments while keeping the same duties that we pretty much had before [the title changed.]" Doc. 8-5, Depo. Marc Clement, p. 35. Plaintiff, on the other hand, testified that the Co-Manager had responsibility for perishables. Depo. of Andreia Lang, p.64. Although there appears to be a dispute concerning whether the positions were the same, that dispute does not bar granting defendant's motion for summary judgment.

To support its contention that plaintiff was not qualified for the position of Co-Director, defendant cites testimony of Edwin Tucker indicating that Ms. Lang was "average" as a Co-Manager and Co-Director and that she "did just what it took to get by [and] didn't try to go over and above to become better or make the store better." Doc. 8-4, Depo. of Edwin Tucker, p. 114. Mr. Tucker also testified that Ms. Lang had experience only as a Center Store Manager. *Id.* at p. 82. Lisa Sierra testified that as a Co-Manager Ms. Lang was "basically doing the roles of a center store manager." Doc. 8-7, Depo. of Lisa Sierra, p. 52.

The evidence cited by defendant is not determinative of the issue of Ms. Lang's qualifications. Winn Dixie produced no specific evidence stating that Ms. Lang was not qualified for the Co-Director position which is not surprising considering she had briefly (for two months) held the position of Co-Director and that there is no evidence evaluating her unsatisfactorily in that position. Additionally, Mr. Tucker described her performance as Co-Director as "average" therby implying that she was qualified for the position. The Interview Evaluation form completed by Mr.

8

Tucker in connection with Ms. Lang's interview for the Co-Director position provides further evidence that she is qualified for the position. The form contains a box for "Recommended" and "Not Recommended"; Mr. Tucker checked "Recommended." Additionally, during the interview process Ms. Lang did not receive any rating of "unacceptable." Thus, there is a genuine issue of material fact as to whether Ms. Lang was qualified for the position of Co-Director.

However, that conclusion does not mandate denying defendant's motion. Assuming *arguendo* that plaintiff establishes her *prima facie* case, Winn Dixie can still prevail on its dispositive motion if it establishes that it had a legitimate, non-discriminatory reason for not promoting plaintiff and plaintiff fails to present evidence that the reasons offered by the employer are a pretext for intentional discrimination. "If the defendant articulates a reason that supports a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out." *Price v. Federal Exp. Corp.*, 283 F.3d at 720.

Winn Dixie submitted significant evidence of a legitimate, non-discriminatory reason for not promoting plaintiff to Co-Director of Store 1467, i.e., that Marc Clement was better qualified that plaintiff for the position of Co-Director of Store 1467. There is undisputed testimony that Store 1467 was "a very difficult store" and "one of my more difficult stores to run." Doc. 8-4, Deposition of Edwin Tucker, p. 52. Specifically, Mr. Tucker testified that Store 1467 is "a low income area that they have a lot of theft in the store and shrink. Turnover is high in that area, and also, so that means hiring is very difficult in that area. It's a store that it's hard to get applicants to come in and apply for that store." Additionally, Mr. Tucker testified that "it takes an experienced co-manager that's been an experienced co-manager for a while and knows the process in there. And you do not want to put a fresh co-manager that would not do a good job. It would hurt their career." Doc. 8-4,

Deposition of Edwin Tucker, p. 52.  Mr. Tucker went on to testify that "[b]ecause the candidates that we had that applied for it was not strong enough at that time that we feel could run that store. I mean they would not do a good job.  It would hurt their career." Doc. 8-4, Depo. of Edwin Tucker, p. 52.

At the time Winn Dixie selected Marc Clement for the Co-Director position at Store 1467, he had six months experience as a Co-Director, approximately 4 months more than Ms. Lang, and 11 years management experience at the Assistant Manager or above level.  Additionally, Mr. Tucker, during his deposition, agreed with counsel for defendant that Mr. Clement was a "seasoned" manager.  All of this evidence establishes a legitimate, non-discriminatory reason for failing to promote Ms. Lang.

Thus, the burden now shifts to plaintiff to show that the reason proffered by Winn Dixie for its failure to promote plaintiff was pretextual.  To establish pretext, the employee must "present sufficient evidence to find that the employer's asserted justification is false." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000).  An employee cannot rely on "tenuous inference or her own subjective beliefs."  *Cordova v. City of Mansfield*, 2006 WL 2513923 at *6, (W.D. La. August 26, 2005); see also *Crawford v. Formosa Plastics Corp*., 234 F.3d at 903.  Plaintiff must offer some evidence from which the fact finder can infer that racial or gender discrimination was the real reason for the failure to promote.  *See McCoy v. City of Shreveport*, 492 F.3d at 562. "[A] showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's reasons are pretextual." *Price v. Federal Express Corp.*, 283 F.3d at 722.  Plaintiff has not offered any evidence raising a genuine issue of material fact that she was better qualified for the Co-Director position than Mr. Clement.

In support of the claim of pretext, plaintiff urges that transferring Mr. Clement to the Co-Director position may have violated the "Consent Decree," but the decree was not provided. Plaintiff indicates that she has an outstanding discovery request for the "Consent Decree," but the record does not indicate that plaintiff filed a motion to compel production of the decree, and she has had months to do so. Absent production of the decree, it cannot be used to establish evidence of pretext.

Plaintiff also points out that Mr. Clement, a white male, was selected for the Co-Director positions despite not having posted for the position, and that all of the posted candidates for the position were females and one was African-American. Those assertions standing alone are insufficient to establish pretext.

Plaintiff also contends that she was not selected for the Co-Director position because she was not part of the "buddy system." In fact, in her deposition, plaintiff testified that she was not buddies with Ron Thomas, Drew Robertson, or Edwin Tucker. Doc. 17-5, p. 196. When asked "[d]o you believe that [the "Buddy System's"] the reasons that you did not get the position at either one of those stores, the co-director position?" *Id.* at 197. She responded "[y]es." *Id.* Plaintiff explained the "buddy system" by stating that the recommendation of Ron Thomas, the store manager at Store 1577 significantly influenced Mr. Tucker's promotion decisions, and that Mr. Clement and Mr. Robertson are friends of Mr. Thomas. Even if true, the "buddy system" does not raise a genuine issue of material fact related to pretext for racial or gender discrimination. Plaintiff has not submitted any evidence from which a fact finder can reasonably infer that racial or gender discrimination was the reason for the failure to promote, particularly considering that Mr. Tucker had previously promoted Ms. Lang. Therefore, the Court grants defendant's motion for summary

judgment with respect to plaintiff's claims for failure to promote her to the Co-Director position at Store 1464.

B. Co-Director Position at Store 1577

For the reasons stated herein above, plaintiff has established a *prima facie* case of race and gender discrimination. In urging that it had a legitimate, non-discriminatory reason for promoting Drew Robertson, Winn Dixie points to the following facts: 1) he had better interview evaluations (2 "superiors", 5 "acceptables," and a better communication score);[6] 2) he had worked in the Center Store Manager position; and 3) Ronnie Thomas, the Store Director, stated:

> Drew was doing financials, you know helping him do the financials, how he was in the perishable departments working on shrink and how to try to reduce shrink. This is over and beyond. This is a center store manager that's trying to learn and do more about it. And he was doing it, plus he was handling his center store manager's job at the same time. He was doing all of the merchandising, coming up with, instead of just taking a pallet of product and dropping it on the floor for sale, he would merchandise it into a selling tool or selling theme that would help create sales and profit for the stores.
>
> So, he was, as a center store manager, he was already doing a lot of the responsibilities as a co-director at that time.

Doc. 8-4, Depo. of Edwin Tucker, p. 83-84. Additionally, Lisa Sierra testified that Drew Robertson performed in a superior manner. Doc. 8-7, Depo. of Lisa Sierra, p. 53. With respect to plaintiff's performance, Ms. Sierra testified that there was nothing to brag about and that Ms. Lang's attitude toward performance was "[j]ust do what I got to do to get the job done." *Id*. at 51. Mr. Robertson's superior evaluations and comments on performance constitute a legitimate, nondiscriminatory reason for hiring, especially considering Mr. Tucker's statements that his decision with respect to

---

[6] With respect to communication ability Mr. Tucker stated that "Drew spoke real well, very clear. Very, very clear." Doc. 8-4, Depo. of Edwin Tucker, p. 78.

promoting Ms. Lang was adversely impacted by her prior voluntary resignation from a Co-Director position to accept a Pricing Manager position.

In an attempt to establish pretext, plaintiff makes the same arguments stated herein above, i.e, the Consent decree, the failure to promote females to the Co-Director position, and the "buddy system." Because plaintiff's arguments are similarly unavailing with respect to this claims, the Court grants defendant's motion for summary judgment on plaintiff's claims for failure to promote her to Co-Director at Store 1577.

C. Intentional Infliction of Emotional Distress

Plaintiff asserts a Louisiana state law claim for intentional infliction of emotional distress based on: 1) the failure to transfer her from Store 1454 to another store to accommodate her child care issues after her mother was diagnosed with cancer; 2) the elimination of the second co-manager position at Store 1454 after Winn Dixie became aware of plaintiff's child care issues; and 3) the failure to promote her. These acts fall far short of the high requirements necessary to establish a claim for intentional infliction of emotional distress.

Under Louisiana law, a claim for intentional infliction of emotional distress is actionable "only if the plaintiff can show '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" *McCoy v. City of Shreveport*, 492 F.3d at 563, citing *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991). "The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.*,

citing *White v. Monsanto*, 585 So.2d at 1209.

No extensive analysis of this claim is necessary. None of the conduct asserted by plaintiff as supporting her claim for intentional infliction of emotional distress even begins to approach the high level necessary to satisfy the standard of conduct announced in *White v. Monsanto*. Additionally, when asked during her position, "[d]o you believe tat Winn Dixie intentionally intended to cause you emotional harm," Ms. Lang responded "[n]o, but its an individual thing." Ex. 17-5, p. 179. The Court grants Winn Dixie's motion for summary judgment with respect to this claim, and will enter judgment dismissing with prejudice all of plaintiff's claims.

New Orleans, Louisiana, this 6th day of August, 2010.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE